For plaintiff: A. S. & A. P. Johnson.

For defendant: Roscoe M. Dexter.

Magerditch S. Berberian
vs.
Joseph E. Miller, Inc. } No. 66015.

September 24, 1930.

HAHN, J. Heard on defendant's motion for a new trial on the usual grounds, after verdict for plaintiff for $1,760.20. The action was assumpsit, based upon various items claimed to be due from defendant to plaintiff. The argument in support of the motion is that the verdict is against the law, the evidence and the weight thereof.

In February, 1920, plaintiff began working for defendant under an oral agreement by which plaintiff was to enamel jewelry for the defendant. Defendant had a shop or department equipped with tools and supplies for such work and plaintiff was to do the work in this shop and receive so much per piece for the work when done. Plaintiff was to pay, or have deducted from the sums due him on account, the expenses of running the shop, including rent, power, labor, materials needed from time to time, and the "overhead" generally. To all intents and purposes plaintiff was in the position of an outside contractor except that he did not own the shop.

In February, 1922, or after two years' work, plaintiff left the shop and ceased work under the agreement. Late in 1925 he began the present action, seeking to recover what he claims is a balance due him under various items of the work according to the agreement.

The evidence shows that plaintiff took over the shop as it stood (trans. pp. 6, 7, 197, 198) and did considerable work for the defendant over a space

of two years. Defendant employed a competent bookkeeper who sent or gave plaintiff statements and checks from time to time on account of and in payment for the work. Plaintiff hired no bookkeeper and kept no books, no payrolls, no independent system of his own (trans. pp. 107-108) as any outside contractor would have had to do. He objected to some of the statements and checks as being incorrect (trans. p. 125) but never refused to accept them (trans. p. 122) and continued working as before. After ceasing work he accepted what was obviously intended as a final statement and check, closing out the account according to defendant's books (trans. pp. 126-127). He states he objected to this and claimed he had not received all that was due him (trans. p. 128) but he never set forth his claim definitely or even sent defendant a letter calling his attention to the matter in a businesslike way and stating the claim specifically (trans. p. 129). He waited nearly four years before bringing suit.

Under these circumstances it would seem that the accounts became in law "accounts stated" and incontestable. Plaintiff claims he objected to many items, but is his objection, in the face of his acceptance of the payments and his continued dealings and long delay in bringing suit, to be construed as a real refusal to accept the account or as an expression of protest and complaint? Bills and accounts perhaps more often meet with complaints than not but are paid nevertheless—the complaint not rising to an actual dispute or refusal to accept or pay. The present instance seems one of this kind. Thus plaintiff makes a claim for two items of $100 each because he did not know whether he had received these or not (trans. pp. 359-362). Should defendant be called upon to prove, after the lapse of several years, what plaintiff did not even keep track of at the time? Defendant no doubt considered the accounts long since closed and acted upon them accordingly. Selling prices are based upon costs and if defendant is now to have the former costs increased, it can not recoup the difference in the selling price—the goods being long since sold and paid for. In the following case, although it was the party who rendered the accounts that sought to open them, the Court said generally:

"It is not necessary, in order to give to the accounts the weight and quality of stated accounts, that they should have been examined and approved * * * there are many circumstances to be considered, such as length of time, acquiescence, and the fact that the party has acted upon them to his injury."

*Greene* vs. *Harris*, 11 R. I. 5, 28.

And in another case it was said:

"Nothing short of an estoppel, or which rises no higher than mere evidence, should have more weight in mercantile transactions than accounts rendered by one man to another, followed by acquiescence, and *above all by subsequent dealings* of the same nature. In the loose way in which business is now conducted, notes, checks, and other instruments for the payment of money, are constantly given by way of accommodation, and under circumstances which invert the apparent order of obligation, and impose the duty of payment on him to whom payment is prima facie to be made. He who receives an account rendered under these circumstances is bound to examine it at once, and point out its mistakes and inaccuracies; and should at all events not mislead the person who has sent it into the belief that the balance which he claims is admitted, by continuing to transact business with him without objection. Although such a course is not necessarily fraudulent, it may obviously be equivalent in its effects to fraud, and should not be sanc-

tioned by a Court of justice, without the most *satisfactory* explanation of the circumstances which have led to it. The rule for a new trial is made absolute."

*Payne* vs. *Nicholas*, 2 Phila. 220 (Penn.).

The fact that plaintiff did accept payment as offered and what was obviously meant as a final statement and payment, gives strong probability to the belief that the objections which he states he made from time to time to certain items were not actual disputes of, and refusals to concede, the items, but were more in the nature of complaints in the hope that the items might be adjusted to his way of thinking and he took what he could get.

Had the accounts not become stated in law, there is not such a preponderance of the evidence in plaintiff's favor as to justify the verdict. Plaintiff, if his case is taken at face value, evidently thought it sufficient to make a vague and general complaint that he was not paid enough or was charged too much, leaving to defendant the burden of unraveling all the details. And plaintiff, with no independent system of accounting of his own and relying largely upon his memory for all details, waited nearly four years before taking action. Time obscures details and makes it necessary to consider a case in a more general light. Considered in this way it will be seen that plaintiff was in the position of an outside contractor and as such would be expected to bear the overhead or general expenses of running the business, including upkeep, and so forth. Plaintiff might well be expected to pay all the items falling under such heads, including the cost of repairs to equipment, advertising for help, rent, power, light, materials or supplies, and wages. Had he been an actual outside contractor, he would have been put to the additional expense of employing a competent bookkeeper to keep account of all this. Whether the amounts were to be charged as flat rates under the agreement or as actual costs in each case is disputed and is hard to determine at this date, but certainly there is much to be said in favor of the charges as shown by the entries made by a regular bookkeeper in the due course of the business and they should not be impugned except by definite and certain evidence to the contrary. In this case there is simply plaintiff's denial of the correctness of the entries and charges, made in the face of his continued acceptance of the statements and checks as issued and his long delay in asserting his rights.

Is it not probable that after ceasing work he evidently began to view the whole matter in the light of a bad bargain, became disgruntled and tried to see what he could do about it by visiting the defendant's office and seeking to go over its books, etc., until, as pointed out in plaintiff's brief, he was told to get out and stay out at a time about a year after he left defendant's employment? He then allowed nearly three years more to elapse before bringing suit.

"Human nature constitutes a part of the evidence in every case. We more easily believe that a person has done what we should have expected under the circumstances, and we require a greater degree of evidence to satisfy us that a person has done something which would be unnatural or improbable."

*Greene* vs. *Harris*, 11 R. I. 5, 17.

In considering in detail the items upon which plaintiff's case rests, the verdict appears unreasonable. The testimony is contradictory. Plaintiff asks that certan inferences be drawn from the evidence favorable to his case, but the natural inferences are as favorable to defendant. Plaintiff claims he was first paid $1\frac{1}{4}$ cents per piece for the work but should have been paid $1\frac{1}{2}$ cents. He testified defendant agreed to pay him the "same price we are paying outside people for

first class enameling" (trans. p. 6) and that there was no price set (p. 16). Harry Blatcher, who represented the defendant and made the agreement with plaintiff, states that a fixed price 1¼ cents was agreed upon, same being the average price paid to outsiders. (p. 197). Plaintiff was paid 1¼ cents at the beginning but states that he found defendant was paying outsiders 1½ cents and that he complained about this and they "told me all right" (p. 16), but from the fact that he was not allowed the ¼ cent extra on past work but only on work thereafter done, it might well be inferred that defendant felt nothing extra was due him under the agreement but would make the price for future work 1½ cents; i. e., that was in the nature of a new agreement so far as price went and a concession on defendant's part. Suppose defendant had refused all payment at the 1½-cent rate, would plaintiff have claimed a breach of the agreement and refused to work at that figure? His whole conduct leads one to believe he would have registered his usual complaint or protest and gone on with what he could get nevertheless.

Two further items in dispute are the charge to be made for electricity used in the furnaces or baking ovens and certain credits for work turned in by plaintiff according to his slips. Taking the evidence as presented the case is not favorable to plaintiff. On the charge for electricity the plaintiff says the cost was to be determined by the simple process of reading a separate meter showing the amount of electricity for his department alone (trans. pp. 6, 104), but at the trial he presents the charge as a computed one not to be determined by the simple reading of a meter (trans. pp. 77-84). Who would have done this computing each month, the computation not being made on the bills as rendered by the company, these bills being simply for the total charge to defendant for all departments? It seems more likely that under such circumstances a flat rate would have been more appropriate, and if the amount was proposed by defendant, the plaintiff as an expert enameler of many years' experience (trans. p. 4) should have known whether the rate was within reason or not. No one can burn gas or electricity at home or in business without learning something of what the monthly charge should average for the particular use. And in case of actual ignorance, prudence would dictate that a party make inquiries and learn something of the matter before accepting statements in which the price is specifically set forth.

The other item for credits on work turned in according to plaintiff's slips, but not found on defendant's ledger in whole or in part, is a substantial item totaling $609.50 according to plaintiff's brief (p. 4.). But plaintiff in order to pay expenses and have anything over must have turned out considerable work per week (trans. p. 124, where the worth is put at $200 or $300). And plaintiff in his brief states that between February 26th and March 31st, 1920, a period of five weeks, plaintiff turned in 108,000 pieces of work at 1¼ cents, an average worth per week of $270. Taking the $200 amount would give a total, for two years or the time plaintiff worked, of $20,000, of which sum $609.50 is about 3%, or an average amount per week of only six dollars. Quite different from the figure given at the trial (trans. p. 26), where the turn-in for a given week was placed at $250 but a credit of only $195 was assumed to be given. Plaintiff might object to a loss of $6 (3%) but waive the item none the less, but should one believe he would accept a sum $55 (20%) less than what was due him, without insisting on and obtaining a prompt adjustment or refusing to do further work? Plaintiff's acts speak louder than his words and his attitude on the slip matter is characteristic of

his position as a whole, which is not that of a man with a definite and substantial grievance at the time, but of a man who, looking back on his work, feels he made a poor bargain in more ways than one and accordingly brings suit based upon everything which by lapse of time and destruction of accounts a defendant can not specifically answer. If in the course of their dealings plaintiff had just cause for complaint, he should and according to experience would have insisted on his rights at that time.

Plaintiff claims one item which falls outside the accounting of the parties. This is $175 for tools and supplies left by him in the shop and which he states he was not allowed to remove. While no inventory of items was made against which to balance the items when he left and though it seems somewhat unlikely that he was discharged as peremptorily as he claims, since he was not a mere employee but a department head or manager, yet there is a clear question of fact in relation to this item and the jury had the right to find for the plaintiff in this respect if they believed his story in relation to it; therefore, so far as the item of $175 is concerned, the verdict should be sustained.

The remainder of the verdict does not do justice between the parties and is against the weight of the evidence. Plaintiff has not sustained the burden of proving his case by a fair preponderance of the evidence.

Motion for a new trial granted unless within ten days from the filing of this rescript plaintiff remits all of said verdict in excess of $175.

For plaintiff: Walling & Walling.
For defendant: F. W. O'Connell and P. V. Marcus.

